LOWELL MANAGEMENT SERVICES, INC.,
Plaintiff-Appellant,†

v.

GENEVA NATIONAL PQC, LLC, Defendant,

SECURITY BANK OF KANSAS CITY,
Defendant-Third-Party Plaintiff-Respondent,

v.

GENEVA NATIONAL COMMUNITY ASSOCIATION, INC.,
Geneva National Condominium Master
Association, Inc. and Paloma Geneva National,
LLC, Third-Party Defendants.

Court of Appeals

*No. 2008AP2533. Submitted on briefs May 11, 2009.
—Decided September 9, 2009.*

2009 WI App 149

(Also reported in 774 N.W.2d 811.)

† Petition to Review denied 3/9/10.

589

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *David C. Williams* of *Harrison, Williams, McDonell & Swatek, LLP*, Lake Geneva.

On behalf of the defendant-third-party-plaintiff-respondent, the cause was submitted on the brief of *Richard Scholze* of *Konicek, Kaiser, Scholze, Wanasek & Zott, S.C., Burlington*; and *Robert J.E. Edwards* and *Amy E. Hatch* of *Polsinelli Shalton PC*, Kansas City, Missouri.

Before Brown, C.J., Anderson and Snyder, JJ.

¶ 1. ANDERSON, P.J. This appeal involves a lien priority dispute between Lowell Management Services,

Inc. and Security Bank of Kansas City. Lowell was the general contractor for a set of time-share duplexes for Geneva National PQC, LLC. The first visible commencement of the construction on the subject real estate occurred no later than April 20, 2005. Security Bank, a bank chartered in Kansas, recorded a mortgage after the start of construction on May 9, 2005. Geneva National defaulted and Lowell started this action to foreclose on its construction lien. Security Bank filed an answer, counterclaim, cross-claim and third-party action. The trial court granted summary judgment for Security Bank, finding that its mortgage had priority over the construction lien. After review, we affirm the trial court and hold that Security Bank's recorded mortgage has priority over Lowell's construction lien.

¶ 2. Under WIS. STAT. § 779.01(4) (2007–08),[1] a construction lien has priority if visible construction started before a mortgage was recorded. However, there is an exception under WIS. STAT. § 706.11(1), which states in relevant part:

**706.11 Priority of certain mortgages, trust funds.**

(1) Except as provided in sub. (4), when any of the following mortgages has been duly recorded, it shall have priority over all liens upon the mortgaged premises and the buildings and improvements thereon, except tax and special assessment liens filed after the recording of such mortgage and except liens under ss. 292.31 (8)(i) and 292.81:

. . . .

(d) Any mortgage executed to a state or national bank or to a state or federally chartered credit union.

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

¶ 3. The trial court properly relied on this exception for its ruling in favor of Security Bank. Lowell appeals, arguing, first, that the exception under WIS. STAT. § 706.11(1) does not apply and, second, that Security Bank's motion on summary judgment did not provide evidence sufficient to meet the descriptive requirements set forth in WIS. STAT. § 846.10(1).[2]

¶ 4. We begin with Lowell's first argument that the statutory exception does not apply. To support its position, Lowell argues that the statute is ambiguous. On the one hand, Lowell admits that a reasonable person could interpret the statute to include "a bank chartered by any other [s]tate in the United States [as determined by the trial court] . . . or even a bank chartered in another country (such as the State of Israel)." On the other hand, the statute could be interpreted to limit the words "a state or national bank" to mean only those banks chartered in the State of Wisconsin. As such, Security—a Kansas chartered bank— would not be able to avail itself of the statute. Security argued that the former interpretation was the proper

---

[2] WISCONSIN STAT. § 846.10(1) regarding foreclosure states:

(1) If the plaintiff recovers the judgment shall describe the mortgaged premises and fix the amount of the mortgage debt then due and also the amount of each installment thereafter to become due, and the time when it will become due, and whether the mortgaged premises can be sold in parcels and whether any part thereof is a homestead, and shall adjudge that the mortgaged premises be sold for the payment of the amount then due and of all installments which shall become due before the sale, or so much thereof as may be sold separately without material injury to the parties interested, and be sufficient to pay such principal, interest and costs; and when demanded in the complaint, direct that judgment shall be rendered for any deficiency against the parties personally liable and, if the sale is to be by referee, the referee must be named therein.

construction and the trial court agreed. Lowell urges that we adopt the latter interpretation.

¶ 5. The trial court reasoned that the purpose of the statutory exception was

> to encourage banks to loan money to developers and people who are going to do construction work. That was the object of the State of Wisconsin.
>
> . . . .
>
> And my ruling is, that clearly, on its face, [WIS. STAT. §] 706.11(1)(d) makes an exception to the priority of construction liens by giving that priority to certain financial institutions to encourage them to lend, and among those are state banks.

¶ 6. Statutory interpretation is a question of law. *State v. Stenklyft*, 2005 WI 71, ¶ 7, 281 Wis. 2d 484, 697 N.W.2d 769. We begin with the statute's text, giving it the common, ordinary, and accepted meaning. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110.

¶ 7. We agree with Security Bank's position and, accordingly, affirm the trial court's reasoned interpretation of the statute. While it is true that WIS. STAT. § 706.11(1) does not explicitly define "state bank," we interpret statutory language in context, "not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Kalal*, 271 Wis. 2d 633, ¶ 46.

¶ 8. Looking to context, we note several signifiers as to legislative intent. First the legislature did not define "state bank" in WIS. STAT. § 706.11; it did not

capitalize "state" as it likely would have done with a defined term, and it did not employ any restrictive language. Second, other subsections of § 706.11 demonstrate legislative awareness as to how to limit a definition to Wisconsin related entities. For example, § 706.11(1)(c)2. refers to the "Wisconsin Health and Educational Facilities Authorities" and § 706.11(1)(c)1. uses the phrase "this state" to refer to entities within Wisconsin. Had the legislature intended to limit the exception in § 706.11(1)(d), as Lowell claims, it could have stated that it applied to "Wisconsin" state banks or banks in "this" state. Third, to limit the meaning of "state bank" to only Wisconsin chartered banks would lead to an absurd result considering that the exception is also extended to all federal banks, most of which are not domiciled in Wisconsin. *See* § 706.11(1)(a). The rational interpretation is that the exception applies to all state banks, not just Wisconsin chartered state banks. As the trial court reasoned, this interpretation of the statutory exception comports with a legislative intent of encouraging banks to finance investment in Wisconsin projects by excepting them from the general rule. To hold otherwise would discourage banks chartered in states other than Wisconsin from lending money to investors hoping to invest in Wisconsin projects and likely trigger the cost of capital for Wisconsin projects to rise. We will not read this sort of restriction into the statute.

¶ 9. We now turn to Lowell's second argument that Security Bank failed to provide descriptive evidence as required under WIS. STAT. § 846.10(1). Lowell concedes that the summary judgment papers filed by Security Bank were sufficient to fix the amount of mortgage debt. Lowell contends, however, that there was not sufficient evidence presented to describe the

mortgaged premises, to determine whether any part thereof was a homestead, and to determine whether the mortgaged premises can be sold in parcels. Lowell's argument is a nonstarter. This is summary judgment. The statute details what should be stated in the *judgment*. The issue at summary judgment was priority. Thus, whether there was sufficient evidence presented to describe the mortgaged premises, to determine whether any part thereof was a homestead, and to determine whether the mortgaged premises can be sold in parcels is not the issue. Once priority is determined, the trial court may order the winning party to draft the judgment. If so ordered, and so drafted, the losing party has the opportunity to object if the judgment fails to meet the statutory prerequisites. We will not waste time addressing Lowell's smoke-and-mirrors argument.

*By the Court.*—Judgment affirmed.